Baldwin, J.
delivered the opinion of the Court.
The plaintiffs in this case have shewn no original equity to set up and enforce the bond of indemnity, in the proceedings mentioned, against the representatives of Nathaniel Smith, one of the sureties therein. According to their own pretensions, the plaintiffs are the representatives of Garland Thompson, and not of William Mitchell, to whom that bond is alleged to have been executed; and the condition thereof was not for the indemnity of the representatives of Thompson, but of Mitchell. Nor have the plaintiffs acquired any equity from the circumstance that the estate of Garland Thompson was derived in part from William Mitchell; the bond of indemnity not being a covenant running with the estate of Mitchell, whether real or personal, against others acquiring the same as purchasers, or as volunteers.
If the plaintiffs can derive any equity against the sureties in the bond of indemnity, it must be from a subrogation 'by anticipation to the successive remedies of others. These remedies are, the judgment of the administrators of Jerdone, upon the original bond which was the subject of the indemnity, against the executors of Price who was one of the sureties therein — the judgment on the relation of Price’s executors against the sureties in the official bond of Garland Thompson, who had been executor of William Mitchell — the claim of those sureties to reimbursement against the representatives of Garland Thompson — the claim of those representatives to be reimbursed by Mitchell’s representatives — and a consequent claim of the latter to the protection afforded by the bond of indemnity.
It is therefore only by treating their suit as a bill quia timet, and for subrogation against those who ought ultimately to be subjected to a burthen with which they are threatened, that the plaintiffs can be entitled, if at all, to the relief which they seek. In that aspect of *118 their case, their claim is to a mere equity, which, like other equities, is open to the defence of laches and lapse of time.
The presumption of payment arising from lapse of when applicable to a legal demand, as in the case of a debt secured by bond, may be repelled by satisfactory evidence that the debt in point of fact has not been paid. That presumption arose in regard to the original bond executed by Mitchell and Charles Thompson and their sureties to Jerdone, which was payable in January 1815, and upon which the action of Jerdone’sadministrators was not brought until after the expiration of about 30 years. The judgment recovered by the plaintiffs in that action, is conclusive, as between the parties thereto, against the presumption of payment: but it does not conclude the representatives of Nathaniel A. Smith, who were neither parties nor privies, and the judgment was recovered by default, and without notice to them pending the action. The question therefore arising upon the legal presumption of payment, and the evidence relied upon to repel it, is still open in the present suit: but upon that question, the Court deems it unnecessary to express an opinion. Nor is it necessary to decide another question presented by the pleadings and evidence, to wit, whether the alleged bond of indemnity was ever executed by Nathaniel Smith.
The plaintiffs in the present suit are not seeking the aid of a Court of equity to enforce a legal demand on their part against the representatives of Nathaniel Smith. They never had any cause of action upon the bond of indemnity alleged to have been executed by Charles Thompson and his sureties to Mitchell. They have at most, as above indicated, a mere equity'to be subrogated to the place of Mitchell’s representative, upon the supposition that the latter may be coerced to pay the balance asserted to have been in arrear upon the ori *119 ginal bond, and the fear that the plaintiffs may consequently be subjected to the loss. Without deciding upon the original merits of the case in that aspect, the Court is of opinion that the plaintiffs are debarred in a Court of equity, under the circumstances of laches and lapse of time disclosed by the record, from the relief which they seek.
This suit was not brought until August 1845, more than 34 years after the original bond to Jerdone was payable, and more than 23 years after the date of the bond of indemnity. In the mean time, Garland Thompson was the executor of Mitchell, from December 1822 until he died in May 1835, a period of nearly 13 years; and it was his duty to make payment of the debt to Jerdone, or require it to be paid by Charles Thompson; and Charles Thompson himself was administrator de bonis non with the will annexed of Mitchell, from May 1836, and also the executor of Garland Thompson, from June 1835, until the revocation of his powers as such in April 1844; and was bound to see to the discharge of the debt, in his representative, as well as his individual character. And yet, the debt to Jerdone, and the claim of Mitchell’s estate to indemnity were suffered to sleep until after Charles Thompson, the original debtor, became, within a few years before the institution of this suit, utterly insolvent. And now after such great lapse of time, and laches on the part of the plaintiffs, and those through whom they derive their supposed equity, they seek by a bill quia timet to set up the bond of indemnity against the representatives of a deceased surety, upon the supposition of its accidental loss, because it cannot be found, and does not appear ever to have been seen by any one since the time of its alleged execution and delivery to Mitchell.
The pretensions of the plaintiffs against the representatives of Smith, are at war with the sound and well settled doctrine of equity, derived not merely from the *120 presumptions and bars which prevail at law, but still-more comprehensive, and founded' upon considerations of policy and justice that require those who invoke its jurisdiction, to do so within a reasonable time, instead of lying by until by their supineness and negligence, there can no longer be a safe determination of the controversy, and their adversaries are exposed to the danger of injustice from loss of information and evidence and means of recourse against others, occasioned by deaths, insolvencies and other untoward circumstances. The application of this equitable doctrine is for the sound discretion of the equitable forum, and does not require the conviction of the Court against the original justice of the claim, or of any other specific ground of defence, but its belief that under the circumstances of the case, it is too late to ascertain the merits of the controversy.
The Court is therefore of opinion, that the plaintiffs are not entitled to the relief which they seek, and that the defendants, whose property has been sequestrated and sold in the progress of the cause, must be restored to the. proceeds thereof.
. Decree reversed with costs, and bill dismissed with costs.